

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 05-22454-CIV-ALTONAGA/TURNOFF

DIEGO VARAS CASADO, a minor,
through his natural parents and legal
guardians, JOSE MARIA VARAS and
OLINDA CASADO, and JOSE MARIA
VARAS and OLINDA CASADO,
individually and as natural parents and
guardians of DIEGO VARAS CASADO,

      Plaintiffs,

vs.

HILTON INTERNATIONAL CO.,
a foreign corporation; and HILTON
HOTELS CORPORATION, a
foreign corporation;

      Defendants.

_____/

## NOTICE OF FILING TRANSLATION OF VENEZUELAN LEGAL MATERIALS

Plaintiffs, by and through undersigned counsel, hereby file for the Court's convenience

English translations of the following two Venezuelan legal authorities referenced at the hearing on

Defendants' Motion to Dismiss for *Forum Non Conveniens*:

    1.    The Venezuelan Supreme Court's opinion in <u>Curra v. Autobuses El Tiempo, C.A.</u>

(Venezuela 2004), attached hereto as Exhibit A; and

    2.    The Chapter of the Venezuelan Civil Code in which the Court may find Article 1.196,

attached hereto as Exhibit B.

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800  Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was furnished via U.S. First Class Mail

to:  Hilarie Bass, Esq., Mark A. Salky, Esq., Ricardo A. Gonzalez, Esq., Greenberg Traurig, P.A.,

1221 Brickell Avenue, Miami, Florida 33131; and William P. Kardaras, Esq., Kardaras & Kellcher,

LLP, 44 Wall Street, New York, NY 10005-1303, on this _14th_ day of September, 2006.

Respectfully submitted,

PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida  33130
(305) 358-2800 / Fax (305) 358-2382

By: _____

Steven C. Marks
Fla. Bar No. 516414
Ricardo M. Martínez-Cid
Fla. Bar No. 383988
Stephen F. Rosenthal
Fla. Bar No. 131458

-2-

Podhurst Orseck, P.A.

25 West Flagler Street, Suite 800, Miami, FL 33130, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

**EXHIBIT A**

/ seal of the Republic
of Venezuela /

LA REPUBLICA BOLIVARIANA DE VENEZUELA

ON ITS BEHALF
THE SUPREME COURT OF JUSTICE

### CIVIL ANNULMENT COURTROOM

### Opinion of Magistrate TULIO ALVAREZ LEDO

In the action for material and moral damages derived from the traffic accident filed by **GLADYS ROMERO DE CURRA, RAMON CURRA,** who is acting in his own representation and that of the minor **ISLAISSYS YAJIXA CURRA,** all represented by attorneys Pedro Perlaza Campos, Hilda Garcia Martinez and Maria Sanchez Maldonado, against **AUTOBUSES EL TIEMPO, C.A.,** headed by its managers **MARIA ALICIA ASENCAO GONZALEZ** and **MANUEL RICARDO ASUNCION,** represented by attorneys Alfredo Rojas Moreno, Alejandro Garcia, Jose Luis Castillo and Luis Ramon Golindano and **SEGUROS LOS ANDES** [LOS ANDES Insurance Co.], represented by attorneys Thaymi Elisa Carrero Diaz, Salvador Benaim Azaguri, Maria Luisa Perez Manchin, Maximo Febres Siso and Isabel Carrera Machado; the Fourth Superior Court on Civil, Mercantile and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas, pronounced its finding on November 8, 2002, in which it declared unfounded the appeal filed by the legal representative of the Co-Defendant and affirmed in all its parts the decision dated October 10, 2001, issued by the First Court of First Instance on Civil, Mercantile and Traffic Matters of the aforementioned Judicial District, which deemed founded the suit.

Against this decision of the Superior Court mentioned, the legal representation of the Co-Defendant announced an appeal for reversal that was accepted and timely formalized. There was an objection.

Once the substantiation of the appeal for reversal was concluded and following all the other legal formalities, the Court pronounces its finding under the opinion of the undersigning

Magistrate who signs it under the following terms:

## PRELIMINARY ISSUE

The Court notes that in the case at hand, the time period allowed for the filing of the appeal for reversal, expired on May 17, 2003. Consequently, the term of twenty (20) consecutive days to file the answer writ to the formalization did expire on June 6 of 2003.

According to the court records, the submission of the objection writ occurred on June 19, 2003, time when the term provided by Article 318 of the Civil Procedure Code had expired.

Since the filing of the said writ was late, because it happened after the corresponding procedural time period had expired, the Court deems it as not having been submitted. It is so pronounced.

## SOLE APPEAL FOR LACK OF
## ACTION

Based on ordinal 1 of Article 313 of the Code of Civil Procedure, it denounces the violation of Articles 12,243, number 4th, 244 and 254 *eiusdem*, for having the defect of non motivation due to omission of evidence.

The submitting party states that when the appeal judge referred to witnesses Juan Martino and Aurelio Dos Santos, regarding the result of the expertise and judicial inspection, he omitted any analysis of the said evidence, which had it been duly corroborated by the court, would have led to the conclusion that the fact producing the accident that caused the death of Milagros Curra was the breaking of the steering ror of the bus, which means that the accident was caused by an

extraneous and non chargeable cause and, consequently, the Co-Defendant "Autobuses El Tiempo, C.A." was exempt of liability which was crucial for the findings of the trial, reason for which it incurs in non motivation for silence/omission of evidence.

The submitting party alleges, textually, as follows:

"... As could be seen, the judge of appeal refers to the testimony of witnesses JUAN MARTINO and AURELIO DOS SANTOS, and also cites the inspection and the expert tests performed, but in the text of the sentence completely omits the analysis of the said evidence, by not making, in a precise and clear way, a pronouncement as to their efficiency or evidentiary value. The judge, when analyzing in his sentence the evidentiary elements provided by the parties, must conduct a rigorous and exhaustive study of each one of those elements, accepting or rejecting them, and expressing his /her pronouncements in a clear, precise and unequivocal manner, as to their efficiency or inefficiency to prove the fact or circumstance due to which the proving originated. In the case at hand, the appeal judge - we repeat – failed to analyze the said evidence, since by saying that the witnesses testimony was valid based on the provisions of Article 508 of the Code of Civil Procedure and that both the judicial inspection and the expert testimony have evidentiary value, he should have engaged in the intellectual operation of determining if such statement was effective or not to prove the facts the Plaintiff had the intention to prove, or if, on the other hand it was not appropriate for that purpose, or to determine that even if it was effective to prove the said facts, these would not have a major repercussion on the controversy in question. The lack of analysis of the statements of the witnesses, of the expert investigations and of the judicial inspection conducted, has a tremendous importance on the finding stated, since if the evidence mentioned are ideal to prove the facts constituting the extraneous cause not chargeable, the sentence should have had a completely different result than that actually pronounced by the appeal judge. Now, we must examine, for the purposes of the suit filed, the result of the expert investigation conducted by expert JOSE (sic) RAMON CALATAYUD, who stated in his findings that: "From the examination conducted to the front carriage of the, bus type, vehicle, Make Reo, with plates C-00801, it could be determined that the STEERING BAR of this vehicle was in fact repaired (REPLACED) AND THAT IF THE STEERING ROD OF A VEHICLE OF THIS TYPE.WERE TO BREAK, THE DRIVER WOULD LOSE CONTROL OVER THE SAME..." On the other hand, the judicial inspection conducted did evidence that at the intersection of Alcabala and Avenida San Martin a layer of asphalt could be observed in the thoroughfare between the central and right lanes of traffic, which is a darker hue than the layer for the surrounding pavement. And that in the location indicated as the site of the accident there was or had been a pothole of large size spanning the right and central lanes of the street, which had been filled or paved recently. The photographs taken at the site, and which are part of the inspection clearly show the existence of a pothole of large size before the paving of the street in question, since the recently applied asphalt layer has the contour of a circumference covering the pre-existing hole.

When corroborating the testimony of witnesses JUAN MARTINO and AURELIO DOS SANTOS, against the results of the investigation conducted and the judicial inspection performed, we should clearly arrive at the conclusion that the fact which generated the

accident that caused the death of citizen MILAGROS CURRA, which was the breaking of the steering rod of the bus, belongs in the category of events known as "non chargeable extraneous cause", in the field of liabilities, which constitutes a cause that relieves from liability.  If the accident was due, as the evidence cited and not analyzed shows, to an non chargeable extraneous cause, in other words, to a circumstance not dependent on the will or the conduct of the agent causing the damage and consequently there was no guilty conduct attached to him, it then becomes evident that there is no responsibility whatsoever from the Defendant, AUTOBUSES EL TIEMPO, C.A.  The logical sequencing of the evidence cited allows us to exclude as originating causes of the accident the guilt of the causing agent, the excess of speed, the negligence of the driver and involves, as a cause originating the event, a non chargeable extraneous cause. Summarizing, the judge appealed omitted to appraise the weight of the previously mentioned testimonial evidence, of the expert investigation and the evidence of the judicial inspection, which would be crucial for the end result of the trial, not fulfilling the requirement stated in ordinal Four (4th) of Article 243 of the Code of Civil Procedure, thus affecting the sentence pronounced, which has the defect of **non motivation** and we request that this Court so reflects expressly in its final sentence…"

In order to make a decision, the Court notes:

The filing is wrongly stated, because the defect of silence of evidence should be denounced in a writ for infraction of law, as was established by the Court in its sentence date June 21, 2000 (Case: Farvenca Acarigua, C.A. versus Farmacia Clearly, C.A.) in which it was recorded that the lack of appraisal and examination of the evidence by the sentencing judge constitutes a violation of Article 509 of the Code of Civil Procedure, and which is a rule for establishing facts and this violation should be denounced based on ordinal 2nd of Article 313 *eiusdem*, which did no happen in this case.

Consequently, the claim of infraction of Articles 12, 243, ordinal 4th, 244 and 254 of the Code of Civil Procedure is denied, due to inappropriate foundation. It is so decided.

## APPEAL FOR INFRINGEMENT OF THE LAW

### I

Based on ordinal 2nd of Article 313 of the Code of Civil Procedure in conformity with 320, it denounces the violation of Articles 12 and 509 *eiusdem*, for having the defect of silence

(omission) of proof.

The petitioner alleges that the appeal judge failed to analyze and evaluate witnesses Juan Martino and Aurelio Dos Santos; the result of the complementary expert investigation and the judicial investigation, reasons for which he could not corroborate the two facts producing the accident and which exempted the Co-Defendant Autobuses El Tiempo, C.A. from responsibility, that are: a) The existence on the pavement of the thoroughfare on which the bus ran, of a hole of large dimension obstructing the central and right lanes of the avenue; and b) The circumstance that, when the driver tried to perform a maneuver with the steering wheel to avoid the pothole in the pavement, the steering rod of the bus broke.

To make its decision, this Court notes:

In order to verify the assertions submitted by the moving party, the Court transcribes the pertinent portion of the appealed sentence:

"... **ANALYSIS OF THE EVIDENCE OF THE CO-DEFENDANT "AUTOBUSES EL TIEMPO, C.A.**

... Omissis...

A) Juan Martino...
The moving party did not cross-examine this witness, so his testimony stands and this Court gives its content full probatory value, according to Article 50o8 of the Code of Civil Procedure, and it is so decided.
B) Aurelio Dos Santos De Freitas...
Since the moving party did not cross-examine this witness when he rendered testimony, his statements stood firm, for which reason this Court gives them full probatory value according to the provisions of Article 508 of the Code of Civil Procedure, and it is so decided.
... Omissis...
Regarding the Judicial Inspection...
Judicial Inspection that this Appeal according to what is provided in Article 1.430 of the Civil Code, concurrently with Articles 507 and 509 of the Code of Civil Procedure grants full probatory value to the facts contained in them, and previously pointed out, and it is so decided.

Regarding the expert investigation conducted on the vehicle owned by the Co-Defendant Autobuses El Tiempo, C.A., it is observed that in it the repair to the steering rod was determined and that the breaking of the steering rod may cause loss of control of the driver over the vehicle, evidence that this Judge notes under the provisions of Article 507 of the Code of Civil Procedure, and it is so decided.

Now, from the joint analysis of the evidence submitted during the process, the event generating the damage is evidenced (accident that occurred on December 19, 1999, which caused the death of Milagros Yaneth Curra Romero). The agent causing damages (the driver of the vehicle, who acknowledged his responsibility for the accident before the Twenty-Seventh Court of First Instance Acting to Control the Criminal Judicial Circuit of the Metropolitan Area of Caracas). Nevertheless, the defendant, during the development of the process at the lower court and during the act of the reports conducted before this Appeal level, insists on defenses directed to changing the responsibility of the driver in the production of the damage, alleging that the conduct of the driver is not culpable, which  constitutes an absolute exemption of civil responsibility.

In this regard, this Court of Appeal notices that, having the driver recognized his responsibility, as it is understood from the certified copy of the sentence pronounced by the Twenty-Seventh Court of First Instance Acting to Control the Criminal Judicial Circuit of the Metropolitan Area of Caracas, previously examined by this Court, according to the provisions of Articles 1,357 and 1,359 of the Civil Code, in other words, giving its contents *erga omnes* effect, the defendant can not pretend to ignore the said responsibility and it is so established..."

From the preceding transcription it becomes clear that the appeal judge did analyze the evidence related to witnesses Juan Martino and Aurelio Dos Santos, as well as the result of the expert investigation and the judicial inspection, because he expressed that the Co-Defendant insisted in changing the value of the driver's civil responsibility in causing the damage and specifically the culpable conduct, with the said evidence.

In that regard, the *ad quem* considered he could not ignore the responsibility of the driver *vis-à-vis* the statement he, himself, made before the Twenty-Seventh Court of First Instance Acting to Control the Criminal Judicial Circuit of the Metropolitan Area of Caracas, by which he recognized his responsibility in the accident, and for this reason *erga omnes* effects were given to that confession, according to what is provided in Articles 1,357 and 1,359 of the Civil Code.

Based on the previously presented reasoning, the denunciation of violation of articles 12 and 509 of the Code of Civil Procedure is deemed contrary to law, and it is so decided.

## II

Based on ordinal 2nd of Article 313 of the Code of Civil Procedure, a violation of Article 1,196 of the Civil Code is denounced due to misinterpretation.

The petitioner alleges that the appeal judge, when granting the Plaintiffs a remedy for the bodily injuries sustained by the victim Milagros Yanet Curra Romero, committed a flagrant violation of Article 1,196 of the Civil Code, because the injuries refer to a damage that can only be claimed by the victim herself, for it is absolutely personal and not transferable.

The petitioner textually alleges as follows:

"... Note that the judge *a quo*, and the appeal judge grant each one of the Plaintiffs an indemnification for the pain suffered (*Pretium Doloris*) due to the bodily injuries sustained by the victim **MILAGROS YANET CURRA ROMERO**, ignoring completely and flagrantly the contents of Article 1,196 of the Civil Code and the reiterated criterion of our doctrine and jurisprudence, in the sense that the *pretium doloris* suffered by the victim could only be claimed by herself and not by her family or relatives, because it is an intimately personal damage to the victim; thus giving rise to the defect of "violation of the law, by openly contradicting the contents of the legal precept. In other words, in the scope of our positive juridical regulations, and by express mandate of Article 1,196 of the Civil Code, the blood relatives, relatives and the spouse, have the right to obtain indemnification for the pain suffered by them due to the death of the victim of an illicit action. Now, according to the same legal provision, the victims of a bodily injury, or an attempt on their honor, their reputation or to the reputation or honor of their family, to their personal freedom, etc., are entitled to receive a remedy for the said injuries. But the precept does not establish that the right to demand indemnification for the pain suffered by the victim for the said damages may be transferred to their relatives, since the right of the latter to receive compensation only occurs in the event that the victim of the bodily injury were to die due to the illegal action producing the initial damage. But when there is only a bodily injury not sufficient to produce death, the right to claim indemnification for the pain suffered (*pretium doloris*) applies only to the victim, due to the fact that it is an intimately personal damage and ergo not transferable.

Based on the reasoning stated, we consider that the sentence pronounced by the Fourth Superior Court on Civil, Mercantile and Traffic Matters of the Judicial District of the Metropolitan Area of Caracas, embodies a flagrant violation to the text of Article 1,196 of the Civil Code insofar as it granted the Plaintiffs an indemnification that could only be granted on behalf of the victim of the illicit action, but does not provide for the benefit of the family members, relatives or spouses, and so constituting the defect of violation of the law by openly contradicting the contents of the cited norm, and we request that the present Court of Civil Repeal of the Supreme Court of Justice so declares

in the sentence to be pronounced during the course of the instant trial.."

To pronounce a decision, the Court:

Article 1,196 of the Civil Code textually expresses the following:

"… The obligation to give relief extends to any material or moral damage caused by the illegal act.

The Judge may, specially, grant an indemnification to the victim in case of bodily injury, of an attempt against their honor, their reputation or to that of their family, to their personal freedom, as well as in case of break-in of their place of residence or to a secret regarding the injured party.

The Judge my equally grant an indemnification to the <u>family members, relatives or spouse as a relief to the pain suffered in case the victim were to die</u>…" (Underlined by the Court).

This legal provision was introduced in the Civil Code of 1942 and establishes the obligation to relieve both the material damage as well as the moral damage. That provision empowers the Judge to grant an indemnification to the victim in case of an attempt on their honor, their reputation or that of their family, to their personal freedom as well as in the case of violation of their residence or a secret related to the injured party. It may also grant an indemnification to the family members, relatives or spouses as a relief for the pain suffered <u>in case of death of the victim</u>."

In a sentence dated December 14, 1966, Case: Adolfo Dasi Taberner vs. Eduardo Perez Newman and Jose Elio Guillen Pernia, Forensic Bulletin, Second Stage October-December , Volume 54, the Court stated:

"It is true, also as held by the petitioner, that Article 1,196 of the Civil Code authorizes the Judge to grant an indemnification to the family members, relatives or spouse, as a relief for the pain suffered only in case of *death* of the victim; but in the case at hand, it was only personal injuries suffered by the mother-in-law of the Plaintiff; and the said provision would not authorize an indemnification for the alleged moral pain suffered by him as a consequence of the injury suffered by his mother-in-law. The indemnification allowed by the law to be given to the family members and relatives, *is only in case of death of the victim*; and when the court being appealed granted it, out of those limits, in

other words, by mere injuries, it violated the Article cited by this reason… (Italics are in the sentence.).

Under the provisions of Article 1,196 of the Civil Code, the Court considers that in case of death of the victim, the heirs have a right to request indemnification only on the grounds of moral damage and not for the bodily injuries that may have been suffered by the *de cujus*, because the heirs or successors suffer the so called indirect or reflex damages stemming from the death of a relative or family member for the damage suffered by the victim, because it is the victim the one that suffers the direct damage or bodily damage for suffering the injuries in his/her own body.

To this regard, the sentence under appeal stated the following:

"… On October 10, 2001, the trial Court pronounced a sentence overruling the exception for lack of quality and interest of the Plaintiff to go ahead with the trial, rejected the previous matter contained in ordinal 8th of Article 346 of the Code of Civil Procedure. It sustained the suit attempted by the Plaintiff by sentencing the Defendants to pay the Plaintiff the following amounts: FIRST: to citizens Ramon Curra and Gladys Romero de Curra, parents of the victim the amount of ten million bolivars (Bs. 10,000,000.00) to each for the following concepts, five million bolivares (Bs. 5,000,000.00) for the injury caused to their daughter Milagros Yaneth Curra Romero and five million bolivares (Bs. 5,000,000.00) for the moral damage suffered. Likewise, to pay to citizen Ramon Curra the amount of one million five hundred thousand bolivares (Bs. 1,500,000.00) for funeral expenses of the *cujus* Milagros Yaneth Curra Romero, who was his daughter; SECOND: Payment of the amount of twenty million to the [female] minor Islayssis Curra for the following reasons, ten million bolivares (Bs. 10,000,000.00) for the bodily damage that caused her mother's death and the amount of ten million bolivares (Bs. 10,000,000.00) for the moral damage caused to her, amounts that will be submitted to the complementary expert appraisal of the sentence.
… Omissis…
On the other hand, the Co-Defendant Autobuses El Tiempo, C.A., in its reporting papers insisted in the Lack of Quality from the Plaintiff to sustain the present action, pointing out that the indemnification derived from the bodily damage or injury only attaches to the victim and thus the Plaintiffs Ramon Curra and Gladys Romero de Curra don't qualify to attempt the indemnification action since the deceased [female] had left a daughter, the latter excludes all the ascendants as such heirs, which means that under no circumstance, the parents of the victim would be entitled to this indemnification and that according to the provisions of article 1,196 of the Civil Code, the obligation of repairing or indemnifying for the bodily damage or injury, is only appropriate regarding the victim of the injury or damage herself..
In this regard, the doctrine and the jurisprudence have been unanimous when construing Article 1,196 of the Code of Civil Procedure (sic.) pointing out the possibility of indemnification to the relatives as remedy for the pain suffered in case of death of the victim, reason for which, when this Appeal Court sustains the criterion held by the

<u>lower court, it pronounces the defense of lack of quality as contrary to law, to sustain the instant action, alleged again by the Defendant in the act of reporting.</u>
Nevertheless, this appeal is considered necessary to support the previous position of bringing up the doctrinal criterion respecting the moral damage and the indemnification for it, which is done as follows.
The legal authority on legal processes, Eloy Maduro Luyano (sic.), in his work Curso de Obligaciones Derecho   Civil [Course on Obligations in Civil Law], Volume III, pages 143 and 144,
… Ommissis…
Following the doctrinal criterion previously transcribed and the probatory analysis conducted by this Superior Court this   Court of Appeal concludes that the sentence pronounced by the First Court of First Instance on Civil, Mercantile and Traffic Matters of this Circuit abides by the law so it must inexorably be in conformity (sic.) and so expressly decides…". (Underlining by the Court).

From the preceding transcription it is evident that the appealed sentence ordered the indemnification to Ramon Curra, Gladys Romero de Curra and the [female] minor Islaissys Curra for the bodily injuries sustained by the deceased Milagros Yaneth Curra Romero, as well as for the moral injury caused by the death of their relative.

Now, according to Article 1,196 of the Civil Code, the parents and the daughter of the deceased [female] are entitled to indemnification for her death and this makes it legitimate for them to demand payment of compensation for moral damage, but not for the bodily injuries sustained by her.

Consequently, when sentencing the Defendant to make payment for the injuries sustained by the deceased Milagros Yaneth Curra Romero by virtue of the traffic accident, the superior judge committed a violation due to misinterpretation of Article 1,196 of the Civil Code, reason for which the denunciation been analyzed is deemed proper, and it is so decided.

## <u>REPEAL WITHOUT REMAND</u>

In the denunciation examined in Chapter I about violation of the law by the Co Defendant Autobuses El Tiempo C.A., the Court sustained the infraction of Article 1,196 of the Civil Code, because the appeal judge granted the Plaintiffs Gladys Romero de Curra, Ramon Curra and Islayssis Yajuxa Curra an indemnification for the bodily injuries sustained by *de cujus* [principal] Milagros Yaneth Curra Romero, derived from the traffic accident.

Given the fact that the statement made by this Honorable Court makes it unnecessary to

make a new pronouncement on the basis of the controversy, according to the provisions of Article 322 of the Code of Civil Procedure, it will repeal without remand the sentence appealed because based on the facts contained in the sentence under appeal there is evidence that the Plaintiffs alleged and proved that a traffic accident did occur which caused the death of Milagros Yaneth Curra Romero, produced by fault of the driver. This fact, duly established in the sentence under appeal proves the right to receive payment only for moral damages and allows the Court to apply the appropriate legal rule.

In fact, in the case of the victim's death, her relatives are entitled to indemnification for moral damage, according to the provisions of Article 1,196 of the Civil Code, they are entitled to collect for moral damage and not for the bodily injuries sustained by her as the appeal judge granted.

Consequently, the Court will use its power to repeal the sentence appealed without remand, and shall order that the corporations Seguros Los Andes C.A. and Autobuses El Tiempo C.A., pay the plaintiffs the amount of Thirty-One Million Five Hundred Thousand Bolivares (Bs. 31,500,000.00) as follows. The first of these corporations will answer for the total amount of the coverage on the policy covering the omnibus with plates No. C-00801, which comes up to Three Million Five Hundred Thousand Bolivares (Bs. 3,500,000.00), and the remaining Twenty-Eight Million Bolivares (Bs. 28,000,000.00) will be charged to Autobuses El Tiempo C.A., all under the notion of moral damage. It is so decided.

## DECISION

Based on the reasons stated, the Supreme Court of Justice, in the Civil Repeal Courtroom, administering justice on behalf of the Bolivarian Republic of Venezuela and by the power on it bestowed by law, states <u>AS FOUNDED</u> the repeal action submitted and formalized by the Co-Defendant Autobuses El Tiempo C.A. against sentence dated November 8, 2002, pronounced by the Fourth Superior Court on Civil, Mercantile and Traffic Matters of the Judicial Circuit for the Metropolitan Area of Caracas, and <u>ANNULS WITHOUT REMAND</u> the appealed sentence. Consequently, this Court declares: 1) <u>PARTIALLY ACCEPTED</u> the lawsuit brought forth by GLADYS ROMERO DE CURRA, RAMON CURRA and ISLAYSSIS YAJIXA

CURRA, against the companies AUTOBUSES EL TIEMPO, C.A. and SEGUROS LOS ANDES, C.A. for damages arising from the traffic accident, so it is only proper to indemnify for the moral damages alleged, 2) **GRANTS** the appeal submitted by the Co-Defendant Autobuses El Tiempo, C.A. against the sentence pronounced on October 10, 2001 by the First Court of First Instance on Civil, Mercantile and Traffic Matters of the aforementioned Judicial District.  Consequently, it **SANCTIONS** the companies **SEGUROS LOS ANDES C.A.** and **AUTOBUSES EL TIEMPO C.A.**, to pay the Plaintiffs the amount of **THIRTY-ONE MILLION FIVE HUNDRED THOUSAND BOLIVARES (Bs. 31,500,000.00)**, distributed as follows: The first of the companies named shall answer for the total amount of the coverage of the policy that covers the bus with plates No. C-00801, and which comes up to Three Million Five Hundred Thousand Bolivares (Bs. 3,500,000.00), and the second,. Autobuses El Tiempo C.A. shall pay the amount of Twenty-Eight Million Bolivares (Bs. 28,000,000.00), all on the basis of moral damages.  The amount granted shall be paid as follows: 1) To each one of the parents of the *de cujus* [principal] citizens Gladys Romero de Curra and Ramon Curra, the sum of ten million Bolivares (Bs. 10,000,000.00) for moral damage and one million five hundred thousand bolivares (Bs. 1,500,000.00) for the funeral expenses of the deceased Milagros yanet Curra Romero.  And 2) To the minor Islayssis Yajixa Curra, the sum of ten million bolivares (Bs. 10,000,000.00) for moral damages.

The Co-Defendant Autobuses El Tiempo C.A. is not sentenced to pay costs for having prevailed in their appeal motion.

Likewise, the sanction for court costs is not applied because there was no absolute victory.

Let it be published and recorded.  The sending of this file to the Court that heard the case is ordered, First Court of First Instance on Civil, Mercantile and Traffic Matters for the Judicial District for the Metropolitan Area of Caracas with the purpose of executing this ruling. Communicate this decision to the Superior Court of origin.

Given, signed and sealed in the Chambers of the Superior Court of Justice, in the Court

of Civil Repeal, on the twenty-seventh (27) day of the Month of July of two thousand and four. 194th Year of the Independence and 145th of the Federation.

Judge Presiding the Court,

_____
CARLOS OBERTO VELEZ

The Vice-President,

_____
ANTONIO RAMIREZ JIMENEZ

Submitting Magistrate,

_____
TULIO ALVAREZ LEDO

Secretary of the Court,

_____
ENRIQUE DURAN FERNANDEZ

**Docket No. AA20-C-2003-000382**

Magistrate Antonio Ramirez Jimenez, attaches the present *"voto salvado"* [saved vote] to the contents of the present decision, based on the following considerations:

The undersigned, does not agree with the solution given to the motion for the analysis of the denunciation of silence of the evidence contained in the denunciation for lack of activity.-

In fact, the occurrence of a defect of silence of evidence should have been examined by this Court in the context of a motion for lack of activity, in conformity with the Constitution in

force and the Civil Code that applies both of which require a full and exhaustive justice; the said purpose would not be fulfilled if any element clarifying the process is omitted

This is the interpretation that shall be given to Article 509 of the Code of Civil Procedure, when stating that the Judges should analyze all the evidence comprised in the file and issuing their opinion, even if it were in a brief and concrete manner, all of it is in conformity with ordinal 1st of Article 313 *eiusdem.-*

For this reason, silence (omission) of evidence should be kept as a reportable error in the context of a motion for lack of activity, totally conforming to ordinal 1st of Article 313 of the Code of Civil Procedure.

The saved voted of the undersigning Magistrate is thus expressed.

Given in Caracas, *ut supra* [above stated ] date.

Judge President of the Court

_____

CARLOS OBERTO VELEZ

The Vice-President,

_____

ANTONIO RAMIREZ JIMENEZ

Submitting Magistrate,

_____

TULIO ALVAREZ LEDO

Secretary of the Court,

RC-00718-270704-03382.htm

_____ _____
ENRIQUE DURAN FERNANDEZ

**Docket No. AA20-C-2003-000382**

**EXHIBIT  B**

**Legal Information Network**

ANDEAN LEGISLATION

**Venezuela**

**Civil Law**

---

### CIVIL CODE OF VENEZUELA

**(Extraordinary Law Gazette No, 2,990 from July 26, 1982)**

**THE CONGRESS OF THE REPUBLIC OF VENEZUELA
DECREES**

**the following**

**CIVIL CODE**

**PRELIMINARY TITLE
ABOUT THE LAWS AND THEIR EFFECTS AND ABOUT THE GENERAL
RULES FOR THEIR APPLICATION**

Article 1
A law is obligatory from the moment of its publication in the OFFICIAL GAZETTE or from a date after that indicated in itself.

Article 2
Ignorance of the law is no excuse for its violation.

Article 3
The law has no retroactive effect.

Article 4
The law shall be given the apparent sense of the proper meaning of the words, according to the connection between them and the intent of the legislator.
When there is no precise provision of the Law, consideration shall be given to the provisions regulating similar cases or analogous matters; and if there were still doubts, the general principles of law shall apply.

Article 5
Waiver of the laws in general is not effective.

Article 6

* * *

Article 1,189
When it happens that the victim has contributed to the damage caused, the obligation to remedy it shall diminish proportionally to the contribution of the victim to said damage.

Article 1,190
The father, the mother, and for lack of these, the tutor, are responsible for the damage caused by the illegal action to the minors residing with them.

The teachers and artisans are responsible for the damage caused by the illegal action of their pupils and apprentices, while they are under their care.

The responsibility of these persons does not have effect when they prove that they have not been able to prevent the act that has given rise to the said responsibility; but it still subsists when the person committing the act is not responsible for lack of reasoning.

Article 1,191
The owners and principals or directors are responsible of the damage caused by the illegal act of their servants and dependants, when engaging in the tasks they have been employed to perform.

Article 1,192
The owner of an animal or he who has it under his care, shall repair the damage it may cause, even though it may have been lost or gone astray, unless he can prove that the accident has occurred due to the victim's fault or by action of a third party.

Article 1,193
Every person is responsible for the things under his/her custody, unless they can prove the damage has been caused due the victim's fault, by the action of a third party, or by an act of God or *force majeure*.

Whomever holds illegally, by any form of deed, all or part of a building, or has furniture on which a fire starts, is not responsible to third parties for the damages caused, unless it is proven that the fire was due to his/her fault or that of other persons for whose action he/she is responsible

Article1,194
The owner of a building or any other construction work attached to the ground, is responsible for the damage caused by their loss, unless he/she proves that said loss has not occurred for lack of repairs or defects in the construction.

Article 1,195
If the illicit action is attributable to several persons, they are jointly obligated to repair the damage caused.

Whomever has completely paid the total of the damage, has a right to action against each one of the co-obligated parties for a share set by a Judge, according to the seriousness of the infraction committed by each one of them.  If it were impossible to determine the degree of responsibility of each one of the co-obligated, the distribution shall be done in like shares.

Article 1,196
The obligation to remedy extends to any material or moral damage caused by the illicit action.

The Judge may, specially , grant an indemnification to the victim in case of bodily injury, of an attempt against his/her honor, his/her reputation, of those of his/her family, to his/her personal freedom, as well as in the event of violation of residence or of a secret related to the injured party.

The Judge may also grant indemnification to the family members, relatives and spouse as a repair for the pain suffered in case of death of the victim.

Chapter II
About the Different Types of Obligations

Section I
Conditional Obligations

Article 1,197
The obligation is conditional when its existence or resolution depends on a future or uncertain event.

Article 1,198
The condition that makes the obligation depend on a future or uncertain event suspends it.

Article 1,199
The condition is causal when it completely depends on a fortuitous event, which is not under the will of the creditor or the debtor.
It is facultative when its fulfillment depends on the will of one of the parties, and mixed when it depends, at the same time, on the will of the contracting parties and the will of a third party, or chance.

Article 1,200
The condition impossible or contrary to law or to good moral standards, nullifies the obligation depending on it if it causes suspense; and it is considered not written if it is resolutory. In any event, the resolutory condition contrary to law of good moral standards, nullifies the obligation of which it has been de determining cause.

Article 1,201
The obligation assumed under the condition of not doing an impossible thing, is considered pure and simple.

Article 1,202
The obligation assumed under a condition that makes it dependant on the only will of he who assumes it, is null.

Article 1,203
When an obligation is assumed under a suspensive condition, and before its discharge the thing object of it expires or deteriorates, the following rules will apply:
If the thing expires completely by no fault of the debtor, the obliga5tion is deemed as not assumed.
If the thing deteriorates by no fault of the debtor, the creditor must receive it in the condition it is, without reduction in the price.
If the thing deteriorates by fault of the debtor, the creditor is entitled to resolve the obligation, or to demand the thing in the status it is in, besides payment for damages.

Article 1,204
The resolutory condition does not suspend the execution of the obligation; it simply obligates the debtor to restore what he/she has received when the event foreseen in the condition occurs.

Article 1,205
Every condition must be satisfied in the way the parties have reasonably wished or understood it would.

Article 1,206
When an obligation has been assumed under the condition that an event would occur at an specific moment, this condition is considered as not satisfied if the time has expired without the occurrence of the event. If there has been no time limit specified, the condition may be satisfied at any time and it will not be considered as not satisfied except when it becomes sure the event will not occur.

Article 1,207
When an obligation has been assumed under the condition of non occurrence of a ...

# CERTIFICATION

The undersigned, Guillermo J. Hernández, attests to the accuracy of the preceding translation into English from documents originally in Spanish, to wit: a) "Ponencia del Magistrado Tulio Alvarez Ledo" [Opinion of Magistrate Tulio Alvarez Ledo], comprised of fifteen (15) pages, and b) excerpts from "Código Civil de Venezuela" [Civil Code of Venezuela], comprised of three (3) pages [for a total of eighteen (18) pages, to the best of my ability and knowledge.

_____ 09. 09/06

Guillermo J. Hernández Guillén
Certified Federal Court Interpreter Eng/Spn
Certified Los Angeles Superior Court Interpreter Eng/Spn
Certified State of California Court Interpreter Eng/Spn
Certified State of California Administ. Hearing Interpreter Eng/Spn
UN and ATA accredited Translator Eng>Spn